UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

PEDIO VAIGASI,                      :

                     Plaintiff,     :      11 Civ. 5088 (RMB)(HBP)

     -against-                      :      OPINION
                                           AND ORDER
SOLOW MANAGEMENT CORP., et al.,     :

                     Defendants.    :

-----------------------------------X


          PITMAN, United States Magistrate Judge:


I.   Introduction


          The following discovery motions are currently pending

in this action:  (1) plaintiff's motion to compel defendants to

produce documents and electronically stored information (Docket

Item ("D.I.") 258), (2) defendants' motion for a protective order

relieving defendants of the obligation of responding to plain-

tiff's second request for the production of documents and notice

of depositions (D.I. 274) and (3) defendants' motion for sanc-

tions (D.I. 285).  For the reasons set forth below, plaintiff's

motion to compel is denied, defendants' motion for a protective

order is granted in substantial and defendants' motion for

sanctions is granted.

II.  <u>Facts</u>

   A.  <u>Plaintiff's Allegations</u>[1]

        Plaintiff formerly worked for the Corporate Defendants[2] as a handyman and assistant resident manager at two apartment buildings in Manhattan, namely 265 East 66th Street (the "66th Street Building") and 525 East 72nd Street (the "72nd Street Building").  Plaintiff's claims arise out of four discreet incidents:  (1) plaintiff's transfer in May 2009 from the 66th Street Building to the 72nd Street Building; (2) plaintiff's reinstatement in 2010 to the position of assistant resident manager at the 66th Street Building; (3) the removal of a door "kickstand" at the 72nd Street Building and (4) the termination of plaintiff's employment in January 2012.  Plaintiff alleges that the foregoing incidents violated Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e <u>et seq</u>. ("Title VII"), the Age

_____

   [1]Plaintiff's factual allegations are discussed at length in the Decision and Order of the Honorable Richard M. Berman, United States District Judge, granting in part and denying in part defendants' motion to dismiss the complaint.  <u>Vaigasi v. Solow Mgmt. Corp.</u>, 11 Civ. 5088 (RMB)(HBP), 2014 WL 1259616 (S.D.N.Y. Mar. 24, 2014).  Familiarity with Judge Berman's decision is assumed.  The description of plaintiff's factual allegations set forth herein is largely derived from Judge Berman's decision.

   [2]The term "Corporate Defendants" is used to refer to the Solow Management Corp., Solow Realty & Development Company LLC and their related entities.

Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq.
("ADEA"); the Americans with Disabilities Act, 42 U.S.C. §§ 12101
et seq. ("ADA"); the Civil Rights Act, 42 U.S.C. §§ 1981 and
1983, the New York State Human Rights Law, N.Y. Exec. L. §§ 290
et seq. ("NYSHRL") and the New York City Human Rights Law, N.Y.C.
Admin. Code §§ 8-101 et seq. ("NYCHRL").

### 1.   The 2009 Transfer

Plaintiff alleges that the 2009 transfer constituted an
adverse employment action because he was effectively demoted from
the position of assistant resident manager to handyman and that
the transfer resulted in more arduous work assignments and a loss
of seniority.  Plaintiff claims that after the transfer, Nelson
Genao, a male in his early thirties replaced plaintiff as assis-
tant resident manger at the 66th Street Building and Giovanni
Bernardino, another male in his thirties, was promoted to man-
ager.  Both Genao and Bernardino are alleged to have had less
training and experience than plaintiff and both are alleged to
have been plaintiff's subordinates before the transfer.

### 2.   The 2010 Reinstatement

Pursuant to his union contract, plaintiff commenced an
arbitration challenging his transfer to the 72nd Street Building;

plaintiff did not allege in the arbitration that the transfer was discriminatory.

By a Consent Award dated October 6, 2010, the parties agreed to "'reinstate [plaintiff] to his former position and shift as Assistant Superintendent'" at the 66th Street Building. Vaigasi v. Solow Mgmt. Corp., supra, 2014 WL 1259616 at *2. Plaintiff alleges that his reinstatement to the 66th Street Building actually "negated" the Consent Award. Specifically, plaintiff alleges that Genao, who allegedly had less training and experience than plaintiff, was appointed as plaintiff's supervisor and that plaintiff was assigned physically demanding work while Genao was assigned paperwork. Plaintiff also alleges that he was the victim of a discriminatory salary structure under which he was denied overtime and favorable assignments while Genao received that work.

3.   The Kickstand Incident

Plaintiff claims that he suffered work-related injuries in 2009 and 2010 including injuries to his back, knee, shoulder eyes and hand and that defendants failed to make reasonable accommodation for these injuries. Specifically, plaintiff claims that in 2010 defendants removed a kickstand from a particular door at the 72nd Street Building, making it more difficult for

4

plaintiff to get supplies and access his shop.  Plaintiff's request that the door be propped open by other means when he was using the door was rejected.

   4.  January 2012 Termination

   Plaintiff claims that in January 2011, plaintiff's doctor determined that plaintiff needed to take time off as a result of defendants' alleged disability, and plaintiff took a medical leave of absence.  In support of his leave, plaintiff submitted a report to his employer from one of his physicians in December 2011 that stated, in substance, that plaintiff was totally disabled and should not perform any work until January 15, 2012.

   In January 2012, the Corporate Defendants informed plaintiff that, due his extended absence, his position had been filled, no similar positions were open and available and that, in light of plaintiff's failure to state an intent to return to work and his failure to provide a specific return date, the Corporate Defendants were terminating plaintiff's employment.

B.   <u>Proceedings to Date</u>

    1.   Defendants' Motion
       <u>to Dismiss</u>

Defendants moved to dismiss the complaint on numerous grounds.  For reasons that are not relevant to the resolution of the present motions, Judge Berman granted the motion in part and denied it in part on March 24, 2014.  Specifically, Judge Berman dismissed all of plaintiff's claims except (1) plaintiff's ADEA discrimination claim with respect to the 2010 Reinstatement against the Corporate Defendants; (2) plaintiff's NYSHRL and NYCHRL claims of age discrimination with respect to the 2009 Transfer and the 2010 Reinstatement against the Corporate Defendants and the individual defendants Tumminia, Dedivanovic, Caliccho, Wischerth, Kearney and Bernardino; (3) plaintiff's ADA failure-to-accommodate claim with respect to the kickstand incident against the Corporate Defendants; (4) plaintiff's NYSHRL and NYCHRL failure-to-accommodate claims with respect to the kickstand incident against the Corporate Defendants and Dedivanovic and (5) plaintiff's NYCHRL hostile environment claim with respect to the 2009 transfer and 2010 reinstatement against the Corporate Defendants and Tumminia, Dedivanovic, Calicchio, Wischerth, Kearney and Bernardino.

More than two months after Judge Berman's decision resolving on the motion to dismiss, plaintiff moved for reconsideration of the decision (Notice of Plaintiff's Motion for Reconsideration, dated May 29, 2014 (D.I. 150)). Judge Berman denied that motion on November 6, 2014 (Decision and Order, dated Nov. 6, 2014 (D.I. 177)). Plaintiff filed a notice of appeal from the decision denying his motion for reconsideration (Notice of Appeal, dated Dec. 5, 2014 (D.I. 192)). The Court of Appeals dismissed that appeal for lack of a final order on March 25, 2015 (Mandate, dated Mar. 25, 2015 (D.I. 261)).

2. Discovery and Related
   Pretrial Proceedings

Although the matter had been referred to me for general pretrial supervision in 2011, discovery had been stayed pending resolution of defendants' motion to dismiss (Endorsed Order, dated Feb. 10, 2012 (D.I. 66)). I lifted that stay after the dismissal motion was resolved on July 21, 2014 (Scheduling Order, dated July 21, 2014 (D.I. 161)). Unfortunately, discovery grew increasingly contentious as the case progressed, and the discovery period was marked by numerous groundless applications by plaintiff. Because the history of plaintiff's pretrial practice bears on the current disputes, I describe it in some detail.

7

                    a.  The October 6,
                        2014 Conference

        I held my first discovery conference in this matter on

October 6, 2014.  Although plaintiff took the position that he

was entitled to all non-privileged material relevant to the

subject matter of the action, I advised him that the Rule 26

standard governing the scope of discovery had been materially

amended in 2000 and that the current standard limited discovery

to non-privileged material relevant to a claim or defense and

that discovery in this case was, therefore, limited to the five

surviving claims.  I then addressed plaintiff's first request for

the production of documents which contained approximately 125[3]

separate requests (Plaintiff's First Request to Defendants, dated

July 28, 2014 (D.I. 164) ("Plaintiff's First Document Request")).

Plaintiff raised a few specific requests at the conference

including number 23 which sought "[a]ll documents (including,

without limitation, any notes, recordings, memoranda, e-mail and

other electronic information or reports) given to Plaintiff,

shown to Plaintiff, read aloud to Plaintiff orally, or made

available for review by Plaintiff which relate to or refer to any

_____

        [3]Plaintiff's First Document Request contains 141 numbered
paragraph.  However, 16 of the 141 paragraphs set forth
instructions and definitions.  125 paragraphs set forth actual
document requests.

terms or conditions of Plaintiff's employment with Defendants" (Plaintiff's First Document Request ¶ 23).  I advised plaintiff that the request was extremely broad and that his requests needed to be more focused.  Because defendants' document production was not then complete, I directed defendants to complete their production by October 10, 2014 and directed the parties to meet and confer with respect to any issues plaintiff may have had with the production.  I further directed plaintiff to send me a letter by October 24, 2014 identifying any unresolved document issues and directed the parties to return for a follow-up conference on October 29, 2014 (Order, dated Oct. 7, 2014 (D.I. 171)).

> b.   The October 29,
> 2014 Conference

On October 29, 2014, I held a two-hour conference with the parties to discuss plaintiff's issues with defendants' document production.  Most of plaintiff's issues lacked merit. For example, although plaintiff had misgivings concerning the completeness of defendants' production with respect to certain categories of documents, he had no specific basis for believing the production was incomplete.  In addition, when pressed to explain the relevance of a category of requested documents, plaintiff would respond by addressing a different category of

documents (Transcript of Proceedings, dated Oct. 29, 2014 (D.I. 228) ("10-29-14 Tr.") at 18-20).  Although defendants had pro-duced a handful of emails that existed in paper form, defendants objected to plaintiff's request for production of electronically stored information ("ESI"), claiming that the it was unduly burdensome and that there was little likelihood that the ESI would yield document relevant to the remaining claims.

Defendants prevailed on the majority of the issues plaintiff raised at the October 29 conference.  With respect to plaintiff's request for production of ESI, I directed defendants to submit an affidavit explaining how the Corporate Defendants maintained their emails and describing the burden of searching for relevant ESI.  I also gave plaintiff the option of making a formal motion to compel the production of additional documents, directed that he make any such motion by December 1, 2014 and ordered that any such motion specifically explain why he believed defendants' production was incomplete and how each category of documents identified in his document request was relevant to the claims remaining in the case (Order, dated Nov. 7, 2014 (D.I. 178)).

c.   The December 5,
2014 Conference

I held another two-hour discovery conference with the
parties on December 5, 2014.  I initially addressed defendants'
claim of burden with respect to the production of ESI.  Prior to
the conference, the Corporate Defendants had submitted, as
ordered, an affidavit addressing the steps that would need to be
taken to search and produce emails (Declaration of Gerard Marti-
nez, dated Nov. 19, 2014 (D.I. 182)).  After questioning the
affiant at the conference, I directed that a sample search be
performed of one custodian's mail box for a limited number of
search terms.  The custodian chosen -- Tumminia -- was believed
to be the most likely source of relevant ESI.

I also addressed plaintiff's motion to compel the
production of documents, filed on December 1, 2014 (Plaintiff's
Notice of Motion to Compel, dated Dec. 1, 2014 (D.I. 186)).
After noting that plaintiff's arguments in his motion to compel
were inconsistent with the positions plaintiff had taken in his
own responses to defendants' document requests,[4] I asked plain

---

[4]Specifically, I noted at the conference:

> [Q]uite honestly, there's a profound tension, to say
> the least, between the position that Mr. Vaigasi took
> in responding to defendant[s'] document request and
>                                          (continued...)

11

tiff why his motion did not explain the relevance of each spe-

cific item in his document request, as he had been instructed to

do in my Order dated November 7, 2014.  Plaintiff claimed that he

was  physically unable to sit at his computer for extended

---

[4](...continued)
          [his] view of the law as set forth in his motion to
          compel.

               You know, Mr. Vaigasi lists 11 general objections
          in his response, and then his responses and objections
          to the 81 requests read as follows:  "Plaintiff states
          that plaintiff is unable to respond or is not obligated
          to respond to Solow defendant requests 1 through 81
          since one or more of the above objections applies.
          Plaintiff reserves the right to supplement, supplant,
          or otherwise amend these responses at any time up to
          and including the trial of this action."

               Yet Mr. Vaigasi writes in his memorandum of law at
          page 2, "courts in this Circuit have commonly held that
          general and conclusory objections as to relevance,
          overbreadth, or burden are insufficient to exclude
          [sic] discovery of requested information.  Here
          defendants have only asserted rote conclusory
          objections that plaintiff's request for production is
          overly broad, unduly burdensome, and oppressive.  These
          objections are baseless."

               At page 5 [of his memorandum of law in support of
          his motion to compel] Mr. Vaigasi wrote, "In objecting
          to discovery this Court has noted that the objecting
          party must offer evidence showing specifically how
          despite the broad and liberal construction afforded the
          Federal discovery rules a request for production is not
          relevant, or how each question is overly broad,
          burdensome or oppressive."  It's an interesting tension
          between the two positions.

(Transcript of Proceedings, dated Dec. 5, 2014 (D.I. 230) ("12-5-
14 Tr.") at 42-43).

periods of time and did not have enough time to address the relevance of each category of documents he was requesting (12-5-14 Tr. at 60-61).  Defense counsel also raised the fact that plaintiff had not produced a single document beyond the documents attached to his second amended complaint.  When I asked plaintiff if he had additional, responsive documents, he could not respond to the question (12-5-14 Tr. at 64).

Because plaintiff's motion to compel did not explain the relevance of each category of documents, and in deference to plaintiff's pro se status, I denied his motion to compel without prejudice to a renewed, properly drafted motion (see 12-5-14 Tr. at 68-69, 71, 74).  I also directed that by January 15, 2015, plaintiff submit a revised response to defendants' document request that addressed each request individually (12-5-14 Tr. at 66, 72-73)  Finally, in response to a request from defendants, I directed plaintiff to identify the health care providers who had treated him for the conditions that he claimed rendered him disabled and directed plaintiff to provide a release for each (12-5-14 Tr. at 81-82).

      d.  The January 22,
          2015 Conference

     After receiving a number of letters raising new discovery disputes, I next met with the parties on January 22, 2015. Despite my Order at the December 5, 2014 conference, plaintiff had refused to execute releases for medical records concerning the conditions that gave rise to his ADA claim,[5] claiming that the physicians who treated him for those conditions may have had records concerning other, irrelevant conditions. However, when I asked plaintiff whether any of those doctors had treated him for other conditions, he stated that they had not. Plaintiff was, therefore, again ordered to execute the releases. In addition, contrary to the oral order issued at the December 5, 2014 conference, plaintiff still had not submitted an amended response to defendants' document requests; he was ordered to so by February 20, 2015. Plaintiff attributed the delay to unidentified physical limitations. I invited plaintiff to submit medical evidence corroborating the existence of any physical condition that prevented him from complying with my deadlines. To this day he has not done so. Defendants also reported on the results of

---

    [5]Plaintiff's ADA and related NYSHRL and NYCHRL claims were based on alleged injuries to his back, left knee, left shoulder, left hand and left eye.

14

their sampling of ESI which disclosed 178 non-privileged emails.
I ordered that these be produced to plaintiff and myself for an
assessment of their relevance to plaintiff's claim.

Prior to the conference, plaintiff had submitted a
letter application to compel the Corporate Defendants to elabo-
rate on their answer.  I explained to plaintiff that no such
motion existed under the Federal Rules of Civil Procedure.
Nevertheless, plaintiff went on to state that he needed more
detail concerning which corporate entity employed him because he
had "no idea" who his employer was.  Given plaintiff's express
allegation that he was employed by Solow Management Corp., Solow
Realty & Development Co., Town House Company, LLC and Solow East
River Development Co., LLC (Third Amended Complaint (D.I. 111) ¶
12) and his admission at the January 22 conference that he
received annual W-2 statements identifying his employer, it is
difficult to understand how plaintiff could honestly represent
that he had "no idea" of the identity of his employer.  I admon-
ished plaintiff not to use discovery proceedings to play games
with the Court.

At the conclusion of the conference, I granted plain-
tiff's application to submit a revised response to defendants'
document requests by February 20, 2015, directed that any addi-
tional discovery requests be served by March 10, 2015 and di-

rected plaintiff to file his revised motion to compel the produc-
tion of documents by March 20, 2015 (Order, dated Jan. 26 2015
(D.I. 208)).

> e.   The February 11,
>      2015 Conference

Approximately three weeks later, I was compelled to
hold another discovery conference on February 11, 2015 to address
a proposed order to show cause plaintiff had submitted on Febru-
ary 9, 2015 (Proposed Order to Show Cause for Preliminary Injunc-
tion and Temporary Restraining Order, dated Dec. 9, 2015 (un-
signed) (D.I. 212)) .  Plaintiff's proposed order to show cause
sought to reargue the precise issues concerning the releases of
plaintiff's medical records that were addressed at length at the
January 22 conference, namely plaintiff's concern that the
physicians might have records concerning irrelevant physical or
mental conditions.  I denied all the relief sought by plaintiff
at the February 11 conference with the following admonition to
plaintiff:

> Mr. Vaigasi, you are getting close to the edge.  I
> appreciate that you are pro se and you are not familiar
> with the rules of procedure, but you are getting close
> to the point where sanctions may be appropriate.  I
> would really caution you to be judicious in your future
> discovery efforts. . . .  If you are dissatisfied with
> one of my rulings, you are free to file objections and
> take an appeal to Judge Berman, but you can't just

16

raise the issue a second time and try to swing at the
ball again.

(Transcript of Proceedings, dated Feb. 11, 2015 (D.I. 237) at 17;
see also Order, dated Feb. 13, 2015 (D.I. 217)).  Notwithstanding
plaintiff's baseless attempt to revisit an issue that was previ-
ously decided, I denied defendants' application for sanctions
(Order, dated Feb. 13, 2015 (D.I. 217)).

Plaintiff filed an appeal from my rejection of his
order to show cause on February 16, 2015 (Letter from Pedio
Vaigasi to the Honorable Richard M. Berman, dated Feb. 16, 2015
(D.I. 219)).  Deeming the appeal to be an application for a
preliminary injunction, Judge Berman denied the application on
February 18, 2015 (Memo Endorsement, dated Feb. 18, 2015 (D.I.
221)) and affirmed my February 13, 2015 Order on February 25,
2015 (Decision and Order, dated Feb. 25, 2015 (D.I. 234)).

> f.  The February 26,
>     2015 Conference

Following another flurry of correspondence concerning
discovery disputes, the parties appeared before me again on
February 26, 2015, primarily to address four subpoenas plaintiff
had served.  Two of the subpoenas were addressed to Otis Elevator
Company and City Wide Window Cleaning.  The former sought docu-
ments concerning work Otis had done at the 66th Street Building

between 2005 and 2011. The latter sought, among other things, documents concerning window cleaning services at the 66th Street Building and a fatal scaffold accident that occurred in 2007. Although these subpoenas sought material that was far afield from plaintiff's five remaining claims, defendants had no privilege or privacy interest in the materials sought, and I denied their application to quash these subpoenas for lack of standing.

The two remaining subpoenas sought documents from law firms that had represented parties adverse to defendants in two different actions brought against the corporate entities -- a wrongful death action arising out of the collapse of a window washing scaffold in 2007 and a discrimination claim brought by an executive employee of the Corporate Defendants. Because the Corporate Defendants had provided confidential documents pursuant to a protective order in both cases, I concluded that the Corporate Defendants had standing and granted their applications to quash these two subpoenas on relevance grounds.

At the February 26 conference, I also ordered plaintiff to appear for his deposition on March 13, 2015 or such other date on which the parties agreed, denied plaintiff's application to further extend discovery and ordered plaintiff to complete his production of documents concerning his medical records, wage and earning information, efforts to mitigate his damages and damages

calculations and to confirm to defendants that his production of the foregoing documents was complete by March 6, 2015.  Because plaintiff claimed that he had an unidentified physical condition that might prevent him from retrieving his documents, my Order further provided that, in lieu of completing his document produc-tion by March 6, I would accept a note from a physician explain-ing why plaintiff was unable to comply with that deadline.

Notwithstanding plaintiff's recurring uncorroborated claims of unidentified physical limitations, the day before the February 26 conference, plaintiff served a second set of document requests on defendants that was 168 pages long and consisted of 1,027 individual requests (Plaintiff's Second Request to Defen-dants Solow Management Corp., etc., dated Feb. 25, 2015 (D.I. 235) ("Plaintiff's Second Document Request")).[6]  Plaintiff's Second Document Request followed the 125-item request for produc-tion of documents plaintiff had served in July 2014 (Plaintiff's First Document Request).  In light of this submission, the written Order that I issued summarizing the outcome of the

---

[6]Although the last request in Plaintiff's Second Document Request is numbered 1,016, several different requests were assigned the same paragraph number, causing the number of the final paragraph to be inaccurately low.  The actual number of requests in Plaintiff's Second Document Request is 1,027.

February 26 conference expressly put plaintiff on notice that discovery was not to be used as a tool for oppression:

> The parties are reminded that "[a] lawsuit is not a game but a search for the truth. The ends of justice are served, not by giving one side a vested right to exhaust the other, but by affording both an equal opportunity to a full and fair adjudication on the merits." Polaroid Corp. v. Casselman, 213 F. Supp. 379, 381 (S.D.N.Y. 1962) (MacMahon, D.J.). The pendency of a lawsuit enables a party to use the tools of discovery to find relevant facts; the tools are powerful and can result in the imposition of great expense and burden. Discovery may not, however, be used to impose unnecessary burden on an adversary or to seek information that has no or minimal relevance to the claims or defenses; if discovery is abused in this manner, monetary sanctions can be imposed. See generally Fed.R.Civ.P. 26(g)(3). I expect all parties to heed these admonitions, to use the time remaining for discovery to address the core issues of liability and damages and to refrain from "'roam[ing] in shadow zones of relevancy . . . to explore matter which does not presently appear germane on the theory that it might conceivably become so.'" In re Surety Ass'n of America, 388 F.2d 412, 415 (2d Cir. 1967), quoting Broadway & Ninety-Sixth St. Realty Co. v. Loew's Inc., 21 F.R.D. 347, 352 (S.D.N.Y. 1958) (Bryan, D.J.). The time remaining to complete discovery is short; the parties should not waste it.

(Order, dated Feb. 27, 2015 (D.I. 239)).[7]

---

[7]I gave similar oral warnings to plaintiff during the course of the February 26 conference (see Transcript of Proceedings, dated Feb. 26, 2015 (D.I. 262) ("2-26-15 Tr.") at 59-61).

g.  Discovery Orders
    Issued in March, 2015

A number of discovery disputes also arose in March 2015 which I resolved in the basis of the parties' written submissions alone.

By letter dated February 25, 2015, defendants sought to conduct a physical and psychological examination of plaintiff based on his disability claims and his claim that he suffered mental distress as a result of defendants' actions (Letter from Melissa D. Hill to the Undersigned, dated Feb. 25, 2015 (D.I. 233)).  After receiving plaintiff's submission, I granted defendants' application in part and denied it in part.  Because plaintiff was alleging an actual disability, I concluded that he had put his physical condition in issue and that defendants were, therefore, entitled to conduct a physical examination limited to the conditions that were the bases for plaintiff's ADA and related NYSHRL and NYCHRL claims.  To the extent defendants sought to conduct a psychological examination, I denied their application without prejudice, finding that plaintiff was seeking only "garden variety" mental distress damages and that such damages did not warrant a psychological examination (Order, dated Mar. 4, 2014 (D.I. 245)).

21

On March 30, 2015, I issued an Order addressing additional discovery disputes.  I denied a motion by plaintiff seeking reconsideration of my Order directing that he submit to a limited physical examination, explaining again that the examination was warranted because plaintiff's ADA claims put plaintiff's physical condition in issue.  My March 30, 2015 Order also denied plaintiff's application for an extension of time to complete discovery.  Plaintiff was again asserting that unspecified physical limitations had prevented him from completing discovery by the deadline of March 10, 2015.  I rejected this claim, finding that it was belied by the "flurry of appeals, correspondence and discovery requests that plaintiff ha[d] generated" (Order, dated Mar. 30, 2015 (D.I. 268)).

### h.  Plaintiff's Interlocutory Appeals

In addition to his numerous discovery disputes, plaintiff has filed multiple interlocutory appeals, each of which was dismissed for lack of a final order.

On April 17, 2014, plaintiff filed a notice of appeal to the United States Court of Appeals from Judge Berman's March 2014 decision which granted in part and denied in part defendants' motion to dismiss the third amended complaint (Notice of

Appeal, dated Apr. 17, 2014 (D.I. 149)).  The Court of Appeals dismissed that appeal <u>sua</u> <u>sponte</u> on July 14, 2014 for lack of jurisdiction because the decision was not a final order (Mandate, dated July 14, 2014 (D.I. 159)).

On December 5, 2014, plaintiff filed a second notice of appeal to the United States Court of Appeals, this time seeking review of Judge Berman's decision denying plaintiff's motion for reconsideration and an Order that I issued which plaintiff described as denying him permission to make an offer of proof (Notice of Appeal, dated Dec. 5, 2014 (D.I. 192)).  The Court of Appeals dismissed this appeal <u>sua</u> <u>sponte</u> on March 25, 2015, again, for lack of a final order (Mandate, dated Mar. 25, 2014 (D.I. 261)).

On March 6, 2015, plaintiff filed a third notice of appeal to the Court of Appeals, this time seeking review of both my February 13 Order directing that plaintiff sign releases for his relevant medical records and Judge Berman's affirmance of my Order (Notice of Appeal, dated Mar. 6, 2015 (D.I. 248)).  On April 15, 2015, plaintiff filed a fourth notice of appeal to the Court of Appeals, seeking review of both my Order directing that he submit to a limited physical examination and Judge Berman's Order affirming my Order (Notice of Interlocutory Appeal, dated Apr. 15, 2015 (D.I. 281)).  The Court of Appeals dismissed both

appeals on August 21, 2015 for lack of a final order (Mandate, dated Aug. 21, 2016 (D.I. 296)).[8]

Plaintiff subsequently petitioned the United States Supreme Court for a writ of certiorari to review the Court of Appeal's August 2015 dismissal of his two appeals concerning his medical records and his physical examination (see Letter from Plaintiff to the Undersigned, dated Dec. 7, 2015 (D.I. 298)). The Supreme Court denied the petitions on January 11, 2016 (Defendants' Reply in Support of their Motion for a Protective Order and Cross-Motion for Sanctions and in Further Opposition to Plaintiff's Motion to Compel, dated Jan. 11, 2016 (D.I. 301) ("Def'ts' Reply"), Exs. 2 & 3).

---

[8]The notices of appeal plaintiff filed in March and April 2015 are particularly troubling.  At the January 22, 2015 conference, I explained the "final order" rule to plaintiff and advised him that, except in very rare situations, the Court of Appeals would entertain only appeals from final orders, i.e., orders that resolved all claims as to all parties.  In addition, the Court of Appeals had dismissed two previous appeals by plaintiff for want of a final order in July 2014 and March 2015. In light of both my advice to petitioner and his own experience with the Court of Appeals, it is difficult to understand why he continued to file interlocutory appeals.

III.  Analysis

    A.  Plaintiff's Motion to Compel
        Production of Documents and
        Defendants' Motion for a
        Protective Order with Respect
        to Document Production

        1.  Plaintiff's
            Document Requests

    Plaintiff's motion to compel production of additional documents is denied and defendants' motion for a protective order is granted.  Plaintiff's motion fails for both procedural and substantive reasons.

        a.  Procedural Defects

    Procedurally, the motion fails to comply with Local Civil Rule 37.1, and Federal Rule of Civil Procedure 37(a)(1).

    Local Civil Rule 37.1 provides:

        Upon any motion or application involving discovery
        or disclosure requests or responses under Fed. R. Civ.
        P. 37, the moving party shall specify and quote or set
        forth verbatim in the motion papers each discovery
        request and response to which the motion or application
        is addressed.  The motion or application shall also set
        forth the grounds upon which the moving party is enti-
        tled to prevail as to each request or response. . . .

This same requirement was set forth in my Order dated November 7, 2014 (D.I. 178) and in my instructions to plaintiff at the

December 5, 2014 Conference (12-5-14 Tr. at 68-69, 71, 74).

Despite the fact that plaintiff has served more than 1,100

separate document requests, his briefs do not quote any of them

and do not explain why plaintiff is entitled to prevail on each

request.  By my count, Vaigasi's main and reply briefs combined

reference only approximately 530 of the 1,152 requests set forth

in his two sets of document requests and even with respect to

those 530 requests, Vaigasi does not provide specific reasons why

each of those requests should be granted.  Rather, plaintiff

offers only conclusory statements that certain requests are

relevant to his remaining claims without bothering to explain the

connection.  The following excerpts from plaintiff's memorandum

of law in support of his motion demonstrate his flawed method of

attempting to establish relevance:

> Solow Bates Number 765-766 confirm SAC ¶ 162 that
> "Dedivanovic takes away the company cellular telephone
> from Vaigasi" as ordered by Tumminia making SRPD ¶ 340
> necessary to evidence SRPD ¶¶289, 291, 320, 517, 564-
> 566.  Dedivanovic is further implicated in Plaintiff's
> termination in Solow Bates Number 794 by stating "Did I
> ever tell you that I never lost an arbitration?  Lol."
> Clearly, Defendants are withholding, inter alia, the
> fact that "Vaigasi is praised by Tumminia for his
> handling of assigned tasks in Ferreras' absence." (TAC
> ¶ 81; SRPD ¶ 182).

> Solow Bates Numbers 974-975 provide a "bonus
> schedule-2008", making bonus schedules for 2005-2012
> quite probative since the schedule also contains an
> employee rating scale and title; evincing who are the
> "similarly situated employees." (SRPD ¶¶ 203, 217-219,

224, 244, 300, 348, 363-365, 382-385, 410, 412, 426, 481, 484, 517, 977-981.)

\*     \*     \*

Solow Bates Number 665 is an unsigned incident report by Bernardino claiming Plaintiff was "assigned to watch over the painting job of hallway doors in all floors from top to bottom" making SRPD ¶¶ 467, 468, 482 and 484 necessary.  The report claims the first instance "occurred on September 17, 10) and that Plaintiff "was notified of OTIS findings on [] Sept 18, 2010" while the report is dated January 5, 2011.  Defendants should be ordered to provide elevator service calls from 2005 through 2011 for 265 East 66th Street and 525 East 72nd Street to facilitate Plaintiff's defense against any allegations.

\*     \*     \*

Since Plaintiff was assigned "Resident Manager" ("RM"), Assistant Resident Manager ("ARM") handyman and porter work it entitled Plaintiff to the salary, vacation, sick time, overtime pay, and other types of compensation of all employees of 265 East 66th Street and One River Place.  (SRPD ¶¶ 148, 158-60, 167, 205, 287, 302, 996).

(Plaintiff's Memorandum of Law in Support of Plaintiff's Motion to Compel the Production of Documents and Electronically Stored Information, dated Mar. 20, 2015 (D.I. 259) ("Pl.'s Opening Mem.") at 12, 13, 28).  The foregoing arguments do not describe the document requests in issue and make no attempt to explain how each request relates to the five claims remaining in the case. The fact that a document request may relate to documents previously produced does not shed any light on whether the request is relevant to a claim or defense.

27

Although reliance on Local Civil Rule 37.1 to reject a motion to compel may, at times, elevate form over substance, <u>see</u> <u>e</u>.g., <u>Shazad v. County of Nassau</u>, No. 13-CV-2268 (SJF)(SIL), 2014 WL 4805022 at *4 (E.D.N.Y. Sep. 26, 2014), that is not the case here.  Despite the limited nature of the remaining claims, plaintiff has served a crushing number of document requests.  If it took a judge five minutes to read, decide and memorialize the ruling as to each request, a review of all of plaintiff's document requests would take more than 96 hours.  If the judge conducting the review had to refer back and forth between plain-tiff's briefs, the requests and defendants' responses, the task would expand exponentially and result in an unreasonable burden on the Court.

Although, I do not rely exclusively on plaintiff's failure to comply with Rule 37.1 to deny plaintiff's motion to compel and to grant defendants' motion for a protective order, it is one of multiple factors that weigh against plaintiff and in favor of defendants.  See <u>Dorchester Fin. Holdings Corp. v. Banco</u> <u>BRJ, S.A.</u>, 11 Civ. 1529 (KMW)(KNF), 2014 WL 3747160 at *5 (S.D.N.Y. July 3, 2014) (Fox, M.J.).

Plaintiff has also failed to comply with Fed.R.Civ.P. 37(a)(1) which requires a good faith attempt to confer with the adverse party in an effort to resolve the discovery dispute

28

without judicial intervention.  Although plaintiff makes a vague
reference to a good-faith meet and confer (Pl.'s Opening Mem. at
17), the representation is not credible.  I advised plaintiff at
the February 26, 2015 conference and in a subsequent written
order that he should reconsider his second set of document
requests (2-26-15 Tr. at 59-61; Order, dated Feb. 27, 2015 (D.I.
239)).  He refused.  The emails between defendants' counsel and
plaintiff concerning plaintiff's document requests confirm that
plaintiff refused to withdraw any of his document requests even
when the irrelevance of numerous requests was expressly pointed
out to him (Memorandum of Law in Support of Defendants' Joint
Motion for Protective Order Enjoining Plaintiff's Second Request
for Production of Documents and Plaintiff's Notice of Deposi-
tions, dated Apr. 8, 2015 (D.I. 275) ("Def'ts' Mem.") Ex. C).  In
light of this email record, plaintiff's representation that he
met with defendants' counsel in good faith is not credible.

        Plaintiff's failure to meet and confer with defense
counsel in good faith is sufficient reason by itself to deny
plaintiff's motion to compel.  Prescient Partners, L.P. v.
Fieldcrest Cannon, Inc., 96 Civ. 7590 (DAB)(JCF), 1998 WL 67672
at *3 (S.D.N.Y. Feb. 18, 1998) (Francis, M.J.) ("Under ordinary
circumstances however, the failure to meet and confer mandates
denial of a motion to compel."); Veleron Holding, B.V. v. BNP

Paribas SA, 12 Civ. 5966 (CM)(RLE), 2014 WL 4184806 at *2
(S.D.N.Y. Aug. 22, 2014) (Ellis, M.J.); Auto. Club of New York,
Inc. v. Port Auth. of New York & New Jersey, 11 Civ. 6746
(RKE)(HBP), 2012 WL 4791804 at *6 (S.D.N.Y. Oct. 9, 2012)
(Pitman, M.J.); Pro Bono Inv., Inc. v. Gerry, 03 Civ. 4347 (JGK),
2005 WL 2429767 at *1 (S.D.N.Y. Sept. 30, 2005) (Koeltl, D.J.); 2
Michael A. Silberberg, Edward M. Spiro & Judith L. Mogul, Civil
Practice in the Southern District of New York § 24:4 (2015-2016
ed.), citing, inter alia, Window Headquarters, Inc. v. Mat Basic
Four, Inc., 91 Civ. 1816 (MBM), 93 Civ. 4135 (MBM), 92 Civ. 5283
(MBM), 1996 WL 63046 at *1 (S.D.N.Y. Feb. 9, 1996) (Mukasey,
D.J.) (denying motion to compel and imposing $200 sanction for
failure to submit certificate that counsel had met and conferred
in good faith); see also Brown v. Lian, No. 10CV396A, 2011 WL
4551474 at *3 (W.D.N.Y. Sept. 29, 2011) (pro se plaintiff's
representation that he "tried unsuccessfully through '[numerous]
writings'" to obtain discovery insufficient to comply with
Fed.R.Civ.P. 37(a)(1)'s meet and confer requirement).

b.   Substantive Defects

In addition to the procedural defects in plaintiff's
motion, the underlying document requests are defective for three
reasons:  (1) they are irrelevant; (2) even if the requests have

some relevance, they are disproportionate to the claims remaining

in the case; (3) they are overbroad and (4) they are unduly

burdensome.  Finally, to the extent plaintiff challenges the

completeness of defendants' production, he has not plausibly

shown that the production is incomplete.

The scope of discovery permitted under the Federal

Rules of Civil Procedure is set forth in Rule 26(b)(1):

> Parties may obtain discovery regarding any non-
> privileged matter that is relevant to any party's claim
> or defense and proportional to the needs of the case,
> considering the importance of the issues at stake in
> the action, the amount in controversy, the parties'
> relative access to relevant information, the parties'
> resources, the importance of the discovery in resolving
> the issues, and whether the burden or expense of the
> proposed discovery outweighs its likely benefit. Infor-
> mation within this scope of discovery need not be
> admissible in evidence to be discoverable.

Information is relevant if:  "(a) it has any tendency to make a

fact more or less probable than it would be without the evidence;

and (b) the fact is of consequence in determining the action."

Fed. R. Evid. 401.  Relevance is a matter of degree, and the

standard is applied more liberally in discovery than it is at

trial.  "'[I]t is well established that relevance for the purpose

of discovery is broader in scope than relevance for the purpose

of the trial itself.'"  Refco Grp. Ltd., LLC v. Cantor Fitzger-

ald, L.P., 13 Civ. 1654 (RA)(HBP), 2014 WL 5420225 at *7

(S.D.N.Y. Oct. 24, 2014) (Pitman, M.J.) (brackets in original),

31

quoting <u>Arch Assocs., Inc. v. HuAmerica Int'l, Inc.</u>, 93 Civ. 2168 (PKL), 1994 WL 30487 at *1 (S.D.N.Y. Jan. 28, 1994) (Leisure, D.J.); <u>see</u> <u>Degulis v. LXR Biotechnology, Inc.</u>, 176 F.R.D. 123, 125 (S.D.N.Y.1997) (Sweet, D.J.); <u>Quaker Chair Corp. v. Litton Bus. Sys., Inc.</u>, 71 F.R.D. 527, 530-31 (S.D.N.Y.1976) (Motley, D.J.).

As noted above, plaintiff's case has been limited to five specific claims arising out of three incidents:  (1) plaintiff's ADEA discrimination claim with respect to the 2010 Reinstatement; (2) plaintiff's NYSHRL and NYCHRL claims of age discrimination with respect to the 2009 Transfer and the 2010 Reinstatement; (3) plaintiff's ADA failure-to-accommodate claim with respect to the kickstand incident; (4) plaintiff's NYSHRL and NYCHRL failure-to-accommodate claims with respect to the kickstand incident and (5) plaintiff's NYCHRL hostile environment claim with respect to the 2009 transfer and 2010 reinstatement. There are no claims in the case based on anything other than age and disability discrimination.  There are no claims currently in the case alleging that plaintiff was wrongfully terminated, treated differently than younger, non-disabled employees in terms of hours, pay, vacation days or discipline or that defendants engaged in a pattern and practice of discrimination against older employees or employees who are protected by the ADA.

32

Despite the narrowness of the remaining claims, Plaintiff's Second Document Request seeks numerous documents that have nothing to do with the claims or defenses.  Because plaintiff himself hasn't bothered to address each specific request and hasn't made the effort to explain how any requests are relevant to the claims (see pages 25-28, above) and given the large number of items sought in Plaintiff's Second Document Request, I am not going to sift through the more than 1000 requests plaintiff has served and attempt to separate the wheat (if any) from the chaff. This is a task plaintiff should have undertaken either during the meet-and-confer process or in his motion to compel.  Rather, I limit my discussion to some examples that illustrate the extraordinary size of the net that plaintiff has cast.

Despite the fact that there is no issue in the case concerning plaintiff's Workers' Compensation claims or benefits, plaintiff seeks:

> 15.  All documents which support, contradict, or in any way relate to or otherwise evidences [sic] any matter regarding Plaintiff's Workers' Compensation Claim(s) from January 1, 2009 to the present.

> 16.  All documents which support, contradict, or in any way relate to or otherwise evidences [sic] any employee of Corporate Defendants attending, and/or testifying at any of Plaintiff's Workers' Compensation hearings from 2009 through 2011.

> 17.  All documents which support, contradict, or in any way relate to or otherwise evidences [sic]

33

Calicchio attending, and/or testifying at any of Plaintiff's Workers' Compensation hearings from 2009 through 2011.

18.  All documents which support, contradict, or in any way relate to or otherwise evidences [sic] Dedivanovic attending, and/or testifying at any of Plaintiff's Workers' Compensation hearings from 2009 through 2011.

19.  All documents which support, contradict, or in any way relate to or otherwise evidences [sic] Garraputa attending, and/or testifying at any of Plaintiff's Workers' Compensation hearings from 2009 through 2011.

20.  Any and all documents provided by or to the New York State Workers' Compensation Board or any entity or employee thereof by any Defendant or their attorney(s), regarding or referencing any of Plaintiff's Workers Compensation Claim(s).

21.  Any and all documents provided by or to the State Insurance Fund or any entity or employee thereof by any Defendant or their attorney(s), regarding or referencing any of Plaintiff's Workers Compensation Claim(s).

22.  Any and all documents evidencing the entity and any insurance payments made or that should have been made to provide Plaintiff's Workers Compensation Insurance.

(Plaintiff's Second Document Request at 12-13).  These requests have no relationship to plaintiff's transfer, reinstatement or the kickstand incident.

Despite the fact that plaintiff's wrongful termination claims have been dismissed, he seeks:

34

526.  Any and all documents which support, contra-
dict, or in any way relate to Paragraph 264 of the
Complaint "that Defendants terminated Mr. Vaigasi []."

527.  Any and all documents which support, contra-
dict, or in any way relate to Paragraph 264 of the
Complaint that "Defendants terminated Mr. Vaigasi
because of his age [] in violation of [] the ADEA []."

528.  Any and all documents which support, contra-
dict, or in any way relate to Paragraph 264 of the
Complaint that "Defendants terminated Mr. Vaigasi
because of his age in violation of the NYSHRL[]."

529.  Any and all documents which support, contra-
dict, or in any way relate to Paragraph 264 of the
Complaint that "Defendants terminated Mr. Vaigasi
because of his age [] in violation of [] the NYCHRL."

530.  Any and all documents which support, contra-
dict, or in any way relate to Paragraph 264 of the
Complaint that "Defendants terminated "Mr. Vaigasi
because of his [] disability in violation of the
ADA[]."

531.  Any and all documents which support, contra-
dict, or in any way relate to Paragraph 264 of the
Complaint that "Defendants terminated Mr. Vaigasi
because of his [] disability in violation of [] the
NYSHRL[]."

532.  Any and all documents which support, contra-
dict, or in any way relate to Paragraph 264 of the
Complaint that "Defendants terminated Mr. Vaigasi
because of his [] disability in violation of [] the
NYCHRL."[9]

---

[9]Items 546-63, 725-50, 761-63, 766-68, 774-76, 782-84 and
946-65 of Plaintiff's Second Document Request also seek documents
concerning plaintiff's termination.

(Plaintiff's Second Document Request at 88-89).  These requests have no relationship to plaintiff's transfer, reinstatement or the kickstand incident.

Other requests that have nothing to do with the issues in the case include:

- Items 9-11 which seek the medical records of plaintiff's former co-workers;

- Items 21-24 which seek Genao's income statements and tax returns;

- Items 25-27 which seek documents relating to the rental value of the apartments in the East 66th Street Building and the costs related to parking spaces and health club dues;

- Items 186-91 which relate to a 2007 accident involving a window washing scaffold and window washing fees;

- Items 490-92 which relate to where plaintiff's name was placed on a holiday card and

- Items 976-96 which seek all apartment work-order forms, work-order log books, chemical reports, packing slips, purchase orders, invoices, "key fob" access entries, payroll approval forms and personal and sick day requests for the period from 2005 through 2011.

The foregoing list is not exclusive, but it demonstrates that plaintiff made no attempt to limit his requests to facts relevant to the issues in the case.

Because plaintiff has served so many grossly irrelevant requests and makes no substantial attempt to justify them or to

36

segregate the arguably relevant from the plainly irrelevant, his motion to compel is denied on the ground that the document requests do not seek relevant information.

Even if each item in Plaintiff's Second Document Request sought relevant documents, plaintiff's motion would still have to be denied because plaintiff's requests are disproportionate to the needs of the case.

Given the recent amendments to the Federal Rules of Civil Procedure that became effective December 1, 2015, proportionality "has become 'the new black,'" Aguilar v. Immigration & Customs Enf't Div. of U.S. Dep't of Homeland Sec., 255 F.R.D. 350, 359 (S.D.N.Y. 2008) (Maas, M.J.), in discovery litigation, with parties invoking the objection with increasing frequency. The 2015 amendments, however, did not establish a new limit on discovery; rather they merely relocated the limitation from Rule 26(b)(2)(C)(iii) to Rule 26(b)(1).  Robertson v. People Magazine, 14 Civ. 6759 (PAC), 2015 WL 9077111 at *2 (S.D.N.Y. Dec. 16, 2015) (Crotty, D.J.) (noting that proportionality has been a limit on discovery since the 1983 amendments to Rule 26); Advisory Committee Notes to the 2015 Amendments to Rule 26 ("Restoring the proportionality calculation to Rule 26(b)(1) does not change the existing responsibilities of the court and the parties to consider proportionality . . . ."); see also Sibley v. Choice

Hotels Int'l, CV-14-634 (JS)(AYS), 2015 WL 9413101 at *2
(E.D.N.Y. Dec. 22, 2015).  The change was intended to "rein-
force[] the Rule 26(g) obligation of the parties to consider [the
proportionality factors] in making discovery requests, responses,
or objections."  Advisory Committee Notes to the 2015 Amendments
to Rule 26.[10]  Thus, the 2015 Amendments constitute a reemphasis
on the importance of proportionality in discovery but not a
substantive change in the law.  Robertson v. People Magazine,
supra, 2015 WL 9077111 at *2 ("[T]he 2015 amendment [to Rule 26]
does not create a new standard; rather it serves to exhort judges
to exercise their preexisting control over discovery more exact-
ingly.").

---

[10]In his 2015 Year-End Report on the Federal Judiciary,
available at http://www.supremecourt.gov/publicinfo/year-
end/2015year-endreport.pdf, Chief Justice John Roberts addressed
the December 2015 amendments to the Federal Rules of Civil
Procedure and noted:

> Rule 26(b)(1) crystalizes the concept of reasonable
> limits on discovery through increased reliance on the
> common-sense concept of proportionality . . . .  The
> amended rule states, as a fundamental principle, that
> lawyers must size and shape their discovery requests to
> the requisites of a case.  Specifically, the pretrial
> process must provide parties with efficient access to
> what is needed to prove a claim or defense, but
> eliminate unnecessary or wasteful discovery.  The key
> here is careful and realistic assessment of actual
> need.

Proportionality focuses on the marginal utility of the discovery sought.  Zubulake v. UBS Warburg, LLC, 217 F.R.D. 309, 322-23 (S.D.N.Y. 2003) (Scheindlin, D.J.); Jill C. Rice & Steven M. Puiszis, Returning to Proportionality, 58 No. 1 DRI for Def. 14 (Jan. 2016); see also Hagemeyer N. Am., Inc. v. Gateway Data Scis. Corp., 222 F.R.D. 594, 602 (E.D. Wis. 2004).  Proportionality and relevance are "conjoined" concepts; the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate.  See Hon. Elizabeth D. Laporte & Jonathan M. Redgrave, A Practical Guide to Achieving Proportionality under New Federal Rule of Procedure 26, 9 Fed. Cts. L. Rev. 20, 53 (Fall 2015) ("[T]he application of the concept of proportionality often turns on how 'central' (or relevant) the proposed discovery may be to overcome any number of objections that are associated with the discovery at issue.").

As set forth in the text of Rule 26(b)(1), multiple factors are relevant in assessing proportionality, and some cases may require a detailed balancing of these factors and the making of fine distinctions.  This, however, is not such a case. Plaintiff's remaining claims arise out of three discrete events -- the 2009 transfer, the 2010 reinstatement and the kickstand incident.  Even if I assume that the items in Plaintiff's Second Document Request had some relevance, it is simply inconceivable

that the 1,027 items set forth in Plaintiff's Second Document
Request are proportional to the needs of the case.  Plaintiff's
First Document Request sought approximately 125 categories of
documents, and defendants, in response, have produced approxi-
mately 1,000 pages of documents, including plaintiff's entire
personnel file, the files concerning plaintiff that were main-
tained at the locations at which he worked, certain employee
handbooks and other materials and selected emails (Def'ts' Mem.
at 8).  Based on my experience in presiding over discovery
disputes in employment discrimination cases, and given plain-
tiff's position and the nature of the surviving claims, the
volume of defendants' production is within the range of what is
normally seen in similar cases.  I appreciate that there is a
strong federal policy against employment discrimination, but that
policy cannot justify the service of a total of more than 1,100
document requests in a single plaintiff discrimination case,
arising out of three transactions and involving a job that would
not ordinarily be expected to generate a substantial volume of
relevant documentation.  Moreover, even if I assume some measure
of relevance, the examples of plaintiff's requests discussed
above demonstrate that the materials requested are at the outer
fringes of relevance with little probative value to the claims.

Similar discovery requests were served in Robertson v. People Magazine, supra, 2015 WL 9077111.  The plaintiff in that case, an African-American female, was a former senior editor at the defendant magazine and alleged that she was discriminated against with respect to the conditions of her employment and wrongfully terminated on the basis of race.  She alleged that meetings at which she was scheduled to pitch article ideas were cancelled, that she was excluded from important emails and that stories in her area of the magazine were assigned to white editors.  She also alleged that her supervisor made racially offensive comments, often concerning stories about African-Americans suggested by plaintiff.  Plaintiff served 135 document requests concerning editorial discussions and the selection of articles for publication.

The Honorable Paul A. Crotty, United States District Judge, denied a motion to compel production of the documents sought, concluding, among other things, that plaintiff's requests were disproportionate.

> The Court has no trouble concluding that Plain-
> tiff's discovery requests are burdensome and dispropor-
> tionate.  Unlike most discrimination cases where dis-
> covery is addressed to allegedly discriminatory conduct
> and/or comments, Plaintiff here seeks nearly unlimited
> access to People's editorial files, including all
> documents covering the mental process of People staff
> concerning what would or would not be published in the
> magazine.  To provide a few examples, Plaintiff re-

quests all documents "concerning any of People Maga-
zine's regular meetings," all documents "concerning any
meeting at which discussions concerning which content
would appear in People Magazine occurred," all docu-
ments "concerning the decision-making process with
regard to choosing who would be put on the cover of
People Magazine," and copies of all of People's covers
and published stories dating back to 2005. . . .  Those
requests (and others) extend far beyond the scope of
Plaintiff's claims and would significantly burden
Defendants.

Robertson v. People Magazine, supra, 2015 WL 9077111 at *2.

Like the plaintiff in Robertson, the plaintiff here is
seeking access to a wide array of documents concerning the
management and operation of defendants' buildings that have very,
very little, if anything, to do with plaintiff's claims.  Plain-
tiff's Second Document Request is far out of proportion to his
claims.

Even if Plaintiff's Second Document Request was rele-
vant and proportional to the needs of the case, they are over-
broad.  Virtually all of the requests set forth in Plaintiff's
Second Document Request seek "[a]ny and all documents which
support, contradict, or in any way relate to" a particular
subject, some of which are broadly defined.  "Blanket requests of
this kind are plainly overbroad and impermissible."  Henry v.
Morgan's Hotel Group, Inc., 15 Civ. 1789 (ER)(JLC), 2016 WL
303114 at *2 (S.D.N.Y. Jan. 25, 2016) (Cott, M.J.), citing, inter
alia, Gropper v. David Ellis Real Estate, L.P., 13 Civ. 2068

(ALC)(JCF), 2014 WL 518234 at *4 (S.D.N.Y. Feb. 10, 2014); <u>Badr</u>
<u>v. Liberty Mutual Group, Inc.</u>, No. 3:06CV1208, 2007 WL 2904210 at
*3 (D. Conn. Sept. 28, 2007) (finding request for "any and all"
documents "overly broad"); <u>see also</u> <u>Pollard v. E.I. DuPont de</u>
<u>Nemours & Co.</u>, No. 95-3010, 2004 WL 784489, at *5 (W.D. Tenn.
Feb. 24, 2004) (holding "any and all" request ambiguous and
overbroad).

       To the extent plaintiff seeks to compel the production
of additional ESI, plaintiff's requests are unduly burdensome.
Because plaintiff had raised a colorable issue with respect to
ESI at the December 5, 2014, I determined that it was appropriate
to conduct a sample search of defendants' ESI to assess the
likelihood that the ESI would contain probative documents.  <u>See</u>
<u>S.E.C. v. Collins & Aikman Corp.</u>, 256 F.R.D. 403, 418 (S.D.N.Y.
2009) (Scheindlin, D.J.) ("The concept of sampling to test both
the cost and the yield is now part of the mainstream approach to
electronic discovery."); <u>see also</u> <u>Pippins v. KPMG LLP</u>, 11 Civ.
377 (CM)(JLC), 2011 WL 4701849 at *9 (S.D.N.Y. Oct. 7, 2011)
(Cott, M.J.) (encouraging sampling to defray unnecessary costs).
I directed defendants to search the mail box of defendant
Tumminia for all documents containing the terms "Vaigasi" or
"Genao" (12-5-14 Tr. at 29).  I selected this custodian after
conferring with plaintiff and counsel for defendants to ascertain

the most likely repository of relevant ESI.  In response to that
Order, defendant produced approximately 178 non-privileged
emails, many of which are duplicates.  I have personally reviewed
these emails, and they contain nothing of incremental value.  To
the extent they bear on facts relevant to this action, they bear
only on facts that are not in dispute such as plaintiff's trans-
fer to the 72nd Street Building and the ensuing grievance pro-
ceeding.  The ESI only confirms that these events occurred -- a
fact which no party challenges.  Beyond that the emails relate
building maintenance and other similar matters; they do not
illuminate any issue relevant to plaintiff's age or disability
discrimination claims.  Given this result and the cost to defen-
dants of producing additional ESI (see Declaration of Gerard
Martinez, dated Nov. 19, 2014 (D.I. 182)), requiring the produc-
tion of additional ESI would be unduly burdensome.

      Finally although plaintiff objects to the completeness
of defendants' document production, he offers nothing to support
this contention other than his personal opinion that there must
be additional non-privileged documents (see, e.g. Pl.'s Opening
Mem. at 9-10).  This unsubstantiated opinion, in the face of
defendants' repeated representations that all requested documents
have either been produced or are the subject of an objection (see
10-29-14 Tr. at 5-8), is an insufficient basis on which to enter

an order to produce additional documents.  Margel v. E.G.L. Gem
Lab Ltd., 04 Civ. 1514 (PAC)(HBP), 2008 WL 2224288, at *3
(S.D.N.Y. May 29, 2008) (Pitman, M.J.) (collecting cases).

        c.   Summary

      As the foregoing demonstrates, plaintiff's motion to
compel documents in response to his Second Document Request is
procedurally deficient and the underlying requests are substan-
tively deficient.  Accordingly, plaintiff's motion to compel
production of documents and ESI is denied, and defendants' motion
for a protective order relieving them of the obligation of
responding to the Plaintiff's Second Document Request is granted.

      B.   Defendant's Motion
          for a Protective Order
          Order with Respect to
          Plaintiff's Deposition Notice

      In addition to seeking a protective order with respect
to Plaintiff's Second Document Request, defendants also seek a
protective order with respect to a notice of deposition that
plaintiff served on March 10, 2015 (Notice of Deposition, dated
March 10, 2015 (D.I. 251)).  The notice sought the depositions of
ten individuals, including Sheldon or Stefan Solow, all to be

45

conducted on April 10, 2015.  To date, plaintiff has not con-
ducted any depositions in this matter.

       Defendants seek a protective order primarily because
plaintiff's deposition testimony indicates that the witnesses
noticed by plaintiff have no knowledge of the relevant facts.
Plaintiff, however, cannot know what someone else knows, and his
deposition testimony on the issue of what certain individuals
know is of little value.  In addition, defendants have not
submitted any affidavits from the individuals in issue establish-
ing their lack of knowledge.

       On the other hand, based on plaintiff's document
requests and the additional conduct discussed below in Section
III(C)(2), there is serious doubt whether plaintiff will conduct
these depositions in good faith.

       Accordingly, balancing plaintiff's conduct in conjunc-
tion with the weight of defendants' factual showing and the
policy in this Circuit of resolving litigation on the merits,
defendants' application is granted to the following extent:
within thirty (30) days of the date of this Order, plaintiff may
conduct the depositions of two witness of his choice (other than
the Solows), each deposition to be limited to a maximum of four
hours.

Defendants' motion for a protective order precluding any deposition of Sheldon or Stefan Solow involves different issues.

The Federal Rules set very liberal limits on the scope of discovery.  A party may inquire about "any matter, not privileged, that is relevant to [a] claim or defense[,]" and "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."  Fed.R.Civ.P. 26(b)(1). "[H]ighly-placed executives are not immune from discovery.  'The fact that [an executive] has a busy schedule' is [] not a basis for foreclosing otherwise proper discovery.'"  Consolidated Rail Corp. v. Primary Industries Corp., No. 92 Civ. 4927, 1993 WL 364471, at *1 (S.D.N.Y. Sept. 10, 1993) (quoting CBS, Inc. v. Ahern, 102 F.R.D. 820, 822 (S.D.N.Y. 1984)).  Even where, as in this case, a high-ranking corporate officer denies personal knowledge of the issues at hand, this "claim . . . is subject to testing by the examining party." Consolidated Rail Corp., 1993 WL 364471, at *1 (citing Amherst Leasing Corp. v. Emhart Corp., 65 F.R.D. 121, 122 (D. Conn. 1974)).

Nevertheless, discovery is not boundless, and a court may place limits on discovery demands that are "unreasonably cumulative or duplicative," or in cases where

the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Fed.R.Civ.P. 26(b)(2)(C).  Likelihood of harassment and business disruption are factors to be considered in deciding whether to allow discovery of corporate executives.  See Consolidated Rail Corp., 1993 WL 364471, at *1; Arkwright Mutual Insurance Co. v. National Union Fire Insurance Co., No. 90 Civ. 7811, 1993 WL 34678, at

47

*2 (S.D.N.Y. Feb. 4, 1993).  Unless it can be demon-
strated that a corporate official has "some unique
knowledge" of the issues in the case, "it may be appro-
priate to preclude a[ ] deposition of a highly-placed
executive" while allowing other witnesses with the same
knowledge to be questioned.  Consolidated Rail Corp.,
1993 WL 364471, at *1 (citations omitted).

Burns v. Bank of America, 03 Civ. 1685 (RMB)(JCF), 2007 WL

1589437 at *3 (S.D.N.Y. June 4, 2007) (Francis, M.J.); see also

RxUSA Wholsale, Inc. v. McKesson Corp., CV-06-4343 (DRH)(AKT),

2007 WL 1827335 at *4 (E.D.N.Y. June 25, 2007).

As the parties seeking to preclude the deposition of

the Solows, defendants bear the burden of proof.  See Penn Group,

LLC v. Slater, 07 Civ. 729 (MHD), 2007 WL 2020099 at *13

(S.D.N.Y. June 13, 2007) (Dolinger, M.J.) ("[T]he proponent of a

protective order, plaintiff bears the burden to demonstrate good

cause for its proposed limitations . . . ."); Infosint S.A. v. H.

Lundbecj A.S., 06 Civ., 2869 (LAK)(RLE), 2007 WL 1467784 at *2

(S.D.N.Y. May 16, 2007) (Ellis, M.J.) ("The party seeking a

protective order has the burden of demonstrating that good cause

exists for issuance of the order." (internal quotation marks

omitted)).  Defendants have not submitted any factual material

addressing what knowledge, if any, the Solows possess concerning

plaintiff's claims; defendants' papers do not even specify the

precise positions held by the Solows.  It would, however, be

unrealistic to doubt that they are highly-placed officers in

entities that own and manage millions of dollars worth of
Manhattan real estate.  It would also be unrealistic to believe
that they have unique knowledge of the facts underlying plain-
tiff's remaining claims.  See generally United States v.
Blackburn, 461 F.3d 259, 264 (2d Cir. 2006) ("What we know as men
and women we must not forget as judges." (quotations marks and
citations omitted)).

Plaintiff's basis for asserting that the Solows have
knowledge of his claims is, at best, gossamer thin.  Plaintiff
cites only allegations in his third amended complaint concerning
the Solows as "evidence" of their knowledge (Plaintiff's Memoran-
dum of Law in Reply to Defendants' Cross Motion for Sanctions,
etc., dated December 31, 2015 (D.I. 300) at 5).  Plaintiff's
unsworn allegations do not, however, constitute a factual showing
of anything.

Thus, defendants have failed to make the factual
showing necessary to justify precluding the depositions of the
Solows, although the unsupported facts they proffer are probably
true.  Plaintiff, on the other hand, has a demonstrated predilec-
tion for extremely abusive discovery and litigation practices and
offers next to nothing to demonstrate that the Solows have
relevant knowledge.  Given this record, the appropriate resolu-
tion is to grant a protective order precluding the depositions of

49

Sheldon and Stefan Solow on the condition that within twenty-one
(21) days of the date of this Order, defendants supply affidavits
or declarations from the Solows confirming their positions within
the Corporate Defendants and confirming that they have no knowl-
edge concerning the events underlying plaintiff's claims apart
from what they may have learned from counsel.  If the affidavits
or declarations suggest that the Solows have relevant knowledge
independent of what they may have learned from counsel, plaintiff
may move for reconsideration of this Order notwithstanding the
time limit set forth in Local Civil Rul 6.3.

     C.   Defendants' Motion
        for Sanctions

      In addition to seeking a protective order with respect
to Plaintiff's Second Document Request and his notice of deposi-
tion, defendants also seek sanctions pursuant to Rules 26 and 37
and the Court's inherent power.

        1.   Applicable
           Legal Standards

      Defendants assert three different legal bases in
support of their motion for sanctions, each of which has its own
legal standard.

Defendants first seek sanctions pursuant to Fed.R.Civ.P. 26(g) which provides, in pertinent part:

**(g) Signing Disclosures and Discovery Requests, Responses, and Objections.**

**(1) Signature Required; Effect of Signature.** Every disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection must be signed by . . . the party personally, if unrepresented . . . . By signing, [a] party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:

\*      \*      \*

**(B)** with respect to a discovery request, response, or objection, it is:

**(i)** consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;

**(ii)** not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and

**(iii)** neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

\*      \*      \*

**(3) Sanction for Improper Certification.** If a certification violates this rule without substantial justification, the court, on motion or on its own, <u>must</u> impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable

                    expenses, including attorney's fees, caused by the
violation.

Fed. R. Civ. P. 26 (emphasis added).

        "Rule 26(g) is designed to curb discovery abuse by
explicitly encouraging the imposition of sanctions.  The subdivision provides a deterrent to . . . excessive discovery . . . by
imposing a certification requirement that obliges each attorney
[or unrepresented party] to stop and think about the legitimacy
of a discovery request . . . ."  1983 Advisory Committee Note to
Rule 26; accord Metro. Opera Ass'n v. Local 100, Hotel Emps. &
Rest. Emps. Int'l Union, 212 F.R.D. 178, 219 (S.D.N.Y. 2003)
(Preska, D.J.), adhered to on reconsideration, 2004 WL 1943099
(S.D.N.Y. Aug. 27, 2004).  Rule 26(g) was enacted in recognition
of the fact that abusive discovery tactics had become a prime
cause of delay and expense in civil litigation.  1983 Advisory
Committee Note to Rule 26, citing, inter alia, ACF Indus., Inc.
v. EEOC, 439 U.S. 1081, 1081 (1979) (denying certiorari) (Powell,
J. dissenting).

        "Imposition of sanctions for a violation of Rule 26(g)
is mandatory."  Clark v. Westchester County, 96 Civ. 8381 (DLC),
1998 WL 709834 at *9 (S.D.N.Y. Oct. 9, 1998) (Cote, D.J.),
citing, inter alia, Chambers v. NASCO, Inc., 501 U.S. 32, 51
(1991).  Rule 26(g) "empowers a district court to impose a

variety of sanctions for improper" conduct.  <u>Chase Manhattan</u>
<u>Bank, N.A. v. Turner & Newall, PLC</u>, 964 F.2d 159, 165 (2d Cir.
1992); <u>accord</u> <u>Zalaski v. City of Hartford</u>, 723 F.3d 382, 395 (2d
Cir. 2013)

  Defendants also seek sanctions pursuant to Rule
37(b)(2).  Rule 37(b)(2) states that a court may grant sanctions
against a party that "fails to obey an order to provide or permit
discovery."  Sanctions may be granted against a party under Rule
37(b)(2) if there is noncompliance with an order, "notwithstand-
ing a lack of wilfulness or bad faith, although such factors 'are
relevant . . . to the sanction to be imposed for the failure.'"
<u>Auscape Int'l v. Nat'l Geographic Soc'y</u>, 02 Civ. 6441 (LAK), 2003
WL 134989 at *4 (S.D.N.Y. Jan. 17, 2003) (Kaplan, D.J.), <u>quoting</u>
8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus,
<u>Federal Practice & Procedure</u> § 2283, at 608 (2d ed. 1994); <u>see</u>
<u>Melendez v. Ill. Bell Tel. Co.</u>, 79 F.3d 661, 671 (7th Cir. 1996)
("Bad faith . . . is not required for a district court to sanc-
tion a party for discovery abuses.  Sanctions are proper upon a
finding of wilfulness, bad faith, or fault on the part of the
noncomplying litigant." (citation omitted)); <u>Alexander v. Fed.</u>
<u>Bureau of Investigation</u>, 186 F.R.D. 78, 88 (D.D.C. 1998) ("In
making the determination of whether to impose sanctions, Rule
37(b)(2) does not require a showing of willfulness or bad faith

as a prerequisite to the imposition of sanctions upon a party."
(citations omitted)).  Although bad faith is not required to
impose sanctions pursuant to Rule 37(b)(2), "intentional behav-
ior, actions taken in bad faith, or grossly negligent behavior
justify severe disciplinary sanctions."  Metro. Opera Ass'n v.
Local 100, Hotel Emps. & Rest. Emps. Int'l Union, supra, 212
F.R.D. at 219; see also Shcherbakovskiy v. Da Capo Al Fine, Ltd.,
490 F.3d 130, 140 (2d Cir. 2007) ("[T]he severity of [the]
sanction must be commensurate with the non-compliance.").  The
decision to impose sanctions "is committed to the sound discre-
tion of the district court and may not be reversed absent an
abuse of that discretion."  Luft v. Crown Publishers, Inc., 906
F.2d 862, 865 (2d Cir. 1990), citing, inter alia, Nat'l Hockey
League v. Metro. Hockey Club, Inc., 427 U.S. 639, 642 (1976) (per
curiam); see Friends of Animals, Inc. v. U.S. Surgical Corp., 131
F.3d 332, 334 (2d Cir. 1997) ("A district court has broad power
to impose Rule 37(b) sanctions in response to abusive litigation
practices." (citation omitted)).  "Pro se litigants, though
generally entitled to 'special solicitude' before district
courts, Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 475
(2d Cir. 2006) (internal quotation marks omitted), are not immune
to dismissal as a sanction for noncompliance with discovery
orders."  Agiwal v. Mid Island Mort. Corp., 555 F.3d 298, 302 (2d

Cir. 2009); accord Davis v. Citibank, N.A., 607 F. App'x 93, 94
(2d Cir. 2015)(summary order).

Finally, the defendants seek the imposition of sanc-
tions pursuant to the Court's inherent power.  "[A]ny federal
court . . . may exercise its inherent power to sanction a party
or an attorney who has 'acted in bad faith, vexatiously, wan-
tonly, or for oppressive reasons.'"  Ransmeier v. Mariani, 718
F.3d 64, 68 (2d Cir. 2013), quoting Chambers v. NASCO, Inc.,
supra, 501 U.S. at 45-46.

> [I]n Residential Funding [Corp. v. DeGeorge Fin. Grp.,
> 306 F.3d 99 (2d Cir. 2002)], the Court of Appeals
> reiterated that "[e]ven in the absence of a discovery
> order, a court may impose sanctions on a party for
> misconduct in discovery under its inherent power to
> manage its own affairs."  306 F.3d at 106-07 (citing
> DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124,
> 135-36 (2d Cir. 1998)); see generally Chambers v.
> NASCO, Inc., 501 U.S. 32, 43, 111 S.Ct. 2123, 115
> L.Ed.2d 27 (1991) ("it has long been understood that
> '[c]ertain implied powers must necessarily result to
> our Courts of justice from the nature of their institu-
> tion,' powers 'which cannot be dispensed with in a
> Court because they are necessary to the exercise of all
> others'") (quoting United States v. Hudson, 7 Cranch
> 32, 34, 3 L.Ed. 259 (1812)).  Like sanctions under §
> 1927, sanctions under the Court's inherent power re-
> quire a finding of bad faith.

Metro. Opera Ass'n v. Local 100, Hotel Emps. & Rest. Emps. Int'l
Union, supra, 212 F.R.D. at 220.  A court may impose sanctions
pursuant to its inherent authority "only upon 'a particularized
showing of bad faith', which requires '[] clear evidence that the

challenged actions are entirely without color and are taken for
reasons of harassment or delay or for other improper purposes'."
<u>Charles v. City of New York</u>, 11 Civ. 2783 (AT)(RLE), 2015 WL
756886 at *3 (S.D.N.Y. Feb. 20, 2015) (Torres, D.J.), <u>quoting</u>
<u>United States v. Int'l Bhd. of Teamsters</u>, 948 F.2d 1338, 1345 (2d
Cir. 1991).

       2.  Application of the
          <u>Foregoing Principles</u>

     Plaintiff's conduct warrants sanctions under Rules
26(g), 37(b)(2) and the Court's inherent power.

     Plaintiff's Second Document Request was unquestionably
prepared and served in bad faith and in a conscious effort to
impose an unreasonable burden on defendants.  As noted above, the
remaining claims arise out of three transactions -- plaintiff's
2009 transfer, his 2010 reinstatement and the kickstand incident.
The service of more than 1,100 document requests in a case of
this limited magnitude shocks the conscience, especially given
the large number of requests that lack even the remotest connec-
tion to plaintiff's claims.

     The extraordinary breadth of plaintiff's requests
cannot be justified by any recalcitrance on the part of defen-
dants with respect to document production.  Defendants have

produced approximately 1,000 pages of documents, including plaintiff's personnel file, his disciplinary record, employee handbooks, documents relating to plaintiff's workman's compensation claims, incident reports relating to plaintiff's claimed injury, plaintiff's payroll and attendance records and other documents.  In response to plaintiff's contention that there was relevant ESI that had not been produced, defendants, pursuant to my Order, searched the mailbox of the custodian most likely to have relevant documents.  That search yielded nothing of incremental value.  In short, defendants have not taken unreasonable positions in discovery, and certainly have not taken any positions that warrant Plaintiff's Second Document Request.

Plaintiff also cannot justify his Second Document Request as the product of a <u>pro</u> <u>se</u> litigant's lack of sophistication.  At the February 26 conference, I repeatedly advised plaintiff that his requests went far beyond what was usually seen in an employment discrimination action and suggested that he consider revising them.[11]  The Order that resulted from

---

[11]At the February 26, 2015 conference, I made the following comments to plaintiff:

> You may want to take a look at Rule 26(g). . . .
> After we finish, just wait for a few minutes.  I'll
> have my clerk make a copy of Rule 26 and give it to
> you.  Rule 26(g) provides as follows:  By signing a
>                                        (continued...)

---

[11](...continued)

discovery request, an attorney or a party certifies
that, to the best of the person's knowledge,
information and belief, or after reasonable inquiry
with respect to a discovery request, response or
objection, that it is consistent with these rules and
warranted by existing rule or by a nonfrivolous
argument for extending, modifying or reversing existing
law, or for establishing new law, is not interposed for
any improper purpose, such as to harass, cause
unnecessary delay, or needlessly increase the cost of
litigation, and that the request is neither
unreasonable nor unduly burdensome or expensive,
considering the needs of the case, prior discovery in
the case, the amount in controversy and the importance
of the issues at stake.

Rule 26(g) goes on to provide that:  If a
certification violates the rule without substantial
justification, the court, on motion or on its own
motion, may impose an appropriate sanction on the
signer, the party on whose behalf the signer was acting
or both.  The sanction may include an order to pay the
reasonable expenses, including attorney's fees, caused
by the violation.

Mr. Vaigasi, if you have, in fact, served
discovery requests that relate only to dismissed
claims, I'm telling you know that you may be running
afoul of Rule 26(g).  You may want to revisit the
requests you've served and maybe think about
withdrawing some of them.

*     *     *

I'm not deciding that today, but when you sign a
discovery request, there are certain obligations that
come with it, and if a discovery request is served to
play games, you're going to have to get your checkbook
out.

*     *     *

(continued...)

58

the conference, which is quoted at page 20 above contained similar admonitions.  Nevertheless, despite these repeated warnings, plaintiff refused to withdraw a single item from his Second Document Request.

The sheer number of plaintiff's document requests, his refusal to reconsider any of his requests and his own inability to justify each of the items in his Second Document Request, in conjunction with the other conduct discussed below, all point to the ineluctable conclusion that Plaintiff's Second Document Request was the product of a conscious effort to draft the most burdensome document requests possible.

---

[11](...continued)
   The rule is clear, and I'm not ruling on it today, but a thousand discovery requests, with the representation from [defense counsel] that they relate -- that some of them relate to claims that have been dismissed -- I'm not deciding today whether she's right or she's wrong, but if she's correct, you may wind up facing sanctions.

                    *       *       *

   I'm suggesting to you that maybe you might want to consider withdrawing some of your requests to eliminate any Rule 26(g) motion that may exist here.  I'm not saying a basis for a motion exists or not, but a thousand discovery requests are rarely seen in an employment discrimination case.

(2-26-15 Tr. at 59-61).

Plaintiff is also subject to sanctions pursuant to Rule 37(b)(2)(A) for violating at least two of my discovery orders. On February 27, 2015, I issued an Order memorializing the rulings I made at the February 26 conference and directing that plaintiff complete his document production concerning his medical records, wage and earning information, mitigation efforts and his damages calculations by March 6, 2015 or provide a note from a physician confirming that plaintiff was physically unable to complete his document production (Order, dated Feb. 27 2015 (D.I. 239)). Defendant has done neither.  The closest he has come to complying with this Order was a note from a physician dated March 4, 2015, submitted on March 31, 2015, stating that plaintiff was "disabled and unable to work" (Letter from Plaintiff to the Undersigned, dated Mar. 31, 2015 (D.I. 269), Ex. A).  Plaintiff's failure to complete production of his documents is particularly troubling given plaintiff's admission at his deposition that he has more than five boxes of files in storage that may contain documents relevant to this action and that he has not reviewed these files to determine whether they contain documents responsive to defendants' requests (Def'ts' Reply, Ex. A at 54-60).

I issued another Order on March 4, 2015, directing that plaintiff submit to a physical examination limited to those conditions that he claimed brought him within the coverage of the

ADA (Order, dated Mar. 4, 2015 (D.I. 245)).  To this day, plain-
tiff has not complied with that Order.  Although plaintiff filed
appeals from that Order, in the absence of a stay, plaintiff's
appeal of that Order to Judge Berman, the Court of Appeals and
the Supreme Court did not relieve him of the obligation of
complying with that Order.  Herskowitz v. Charney, 93 Civ. 5248
(MGC), 1995 WL 104007 at *3 (S.D.N.Y. Mar. 8, 1995) (Cedarbaum,
D.J.) ("In the absence of a stay, the fact that a litigant has
appealed to the District Court from a Magistrate Judge's discov-
ery order does not excuse failure to comply with that order.");
Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc., 124 F.R.D.
75, 78-79 (S.D.N.Y. 1989) (Canella, D.J.) (filing objections to
an order by a magistrate judge does not operate to automatically
stay the magistrate judge's order); accord Am. Rock Salt Co. v.
Norfolk S. Corp., 371 F. Supp. 2d 358, 360 (W.D.N.Y. 2005).

      Finally, plaintiff's conduct in this litigation sug-
gests that he views the litigation itself as a vehicle to secure
retribution for what he perceives as defendants' unfair treatment
of him.  In addition to his gargantuan discovery requests and his
disobedience of at least two of my Orders, the record discloses
the following obstructive behavior by plaintiff:

- Plaintiff has asserted objections to defendants'
  discovery requests that he claimed were legally

61

deficient when these same objections were asserted by defendants (see footnote 4, above).

- Plaintiff has taken four interlocutory appeals from non-final Orders (D.I. 149, 192, 248 and 281). The filing of the last two appeals is particularly troubling because they were filed after the January 22, 2015 conference at which I explained the "final order" rule to plaintiff, advising him that, except for very rare situations, a federal appellate court would entertain an appeal only after a district court had issued a final order that disposed of all claims as to all parties.

- Plaintiff sought a conference, seeking "clarification" of the Court's subject matter jurisdiction, despite the facts that plaintiff brought this action under a federal statute, expressly alleged that jurisdiction existed and defendants never challenged this Court's subject matter jurisdiction (see endorsed Order, dated Jan. 30, 2015 (D.I. 211)).

- Plaintiff's refusal to withdraw any of his document requests, even after my admonitions to him to confer with defendants in good faith and my warnings to him concerning the consequences of improper discovery requests suggest that he has not conferred with defendants in good faith.

- Plaintiff's testimony at his deposition suggests that he may have no evidence whatsoever for his claims. For example, he was unable to answer what he believed were the reasons for the 2009 transfer, what decisions Calicchio made concerning plaintiff's employment, how often he interacted with certain other employees, and whether there was evidence of age discrimination other than the fact that the comparators plaintiff identified were younger than plaintiff (Def'ts' Reply, Ex. A at 213, 236, 238, 315-16).

- Plaintiff has cited unspecified physical limitations as excuses for his inability to comply with

62

his discovery obligations while simultaneously prosecuting multiple meritless appeals and drafting his Second Document Request.

I have not failed to consider that plaintiff is proceeding pro se and is not familiar with judicial proceedings, nor have I overlooked the fact that discrimination is often subtle, frequently proved by circumstantial evidence, see Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 603 (2d Cir. 2006), and sometimes warrants broad discovery. Golia v. Leslie Fay Co., 01 Civ. 1111 (GEL), 2003 WL 21878788 at *11 (S.D.N.Y. Aug. 7, 2003) (Lynch, D.J.). Nevertheless, the foregoing behavior is so far beyond the bounds of reason, that the inference of plaintiff's bad faith is overwhelming.

### 3. The Appropriate Sanction

The factors relevant to the determination of the appropriate sanction for misconduct in discovery include: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance." Agiwal v. Mid Island Mortgage Corp., supra, 555 F.3d at 302-03 (quotation marks and citations omitted); accord

63

Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 852-54 (2d Cir. 1995).  An application seeking the sanction of dismissal has to be considered with particular care.  "[B]ecause dismissal is a drastic remedy, it should be imposed only in extreme circumstances, usually after consideration of alternative, less drastic sanctions."  West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999) (inner quotation marks and citations omitted); accord Metro Found. Contractors v. Arch Ins. Co., 551 F. App'x 607, 609-10 (2d Cir. 2014) (summary order); Reed v. Friedman Mgmt. Corp., 11 Civ. 7547 (JPO)(GWG), 2015 WL 5008629 at *5 (S.D.N.Y. Aug. 24, 2015) (Gorenstein, M.J.).

Application of the foregoing factors yields the following results.

            a.   The Willfulness of
                 the Non-Compliant Party

For the reasons discussed above, I conclude that plaintiff's actions were willful and that plaintiff acted in bad faith.  This factor weighs in favor of a harsher sanction.

b.   The Efficacy of
<u>Lesser Sanctions</u>

Although defendants seek the ultimate sanction of dismissal, there are lesser sanctions that will further the purposes of sanctions.

Discovery sanctions serve a "threefold purpose":  (1) to ensure that the wrongdoer does not benefit from his misconduct; (2) to secure compliance with discovery orders and (3) to deter the wrongdoer and others from engaging in similar conduct. <u>Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.</u>, 602 F.2d 1062, 1066 (2d Cir. 1979); <u>accord</u> <u>Granados v. Traffic Bar & Rest., Inc.</u>, 13 Civ. 500 (TPG)(JCF), 2015 WL 9582430 at *3 (S.D.N.Y. Dec. 30, 2015) (Francis, M.J.).  Thus, the pertinent question is whether sanctions short of dismissal further these purposes.

With respect to plaintiff's overbroad document request, I have already stayed defendants' obligation to respond (Endorsed Order, dated Mar. 30, 2015 (D.I. 265)).  Thus, defendants have not incurred the cost of responding to those requests.  A protective order permanently relieving defendants of the obligation of responding to those requests and precluding plaintiff from serving any further document requests will ensure that plaintiff will not succeed in using discovery to wage a war of attrition.

To the extent plaintiff has failed to complete production of his own documents or failed to answer questions at his deposition, an appropriate sanction is an order precluding plaintiff from offering or using any document that he has not already produced or that has not been produced by defendants and precluding plaintiff from relying on facts that were asked about at his deposition but which he failed or refused to disclose.

With respect to the physical exam, an appropriate sanction is an order directing plaintiff to submit to the exam within thirty days of this Order with the proviso that if he fails to do so, his remaining claims will be dismissed with prejudice.  The foregoing sanctions will ensure that plaintiff complies with my discovery order.

Finally, specific and general deterrence will be achieved through the imposition of an Order as required by Rules 26(g)(3) and 37(b)(2)(C) holding plaintiff liable for the reason-able attorney's fees defendants incurred in addressing the motions resolved herein and providing that, if plaintiff is unable to pay those fees, they will be a taxable cost against plaintiff at the conclusion of this action regardless of the outcome of this matter.  I expect that the fees for which plain-tiff is liable exceed $50,000 which is a potent deterrent both for plaintiff and the vast majority of litigants.

The availability and efficacy of these lesser sanctions weighs against the dismissal of a more severe sanction.

### c.   The Duration of the Period of Misconduct

Plaintiff's misconduct here occurred primarily between January and March 2015.  It did not infect the entire proceeding. The relatively short duration of plaintiff's misconduct weighs against the imposition of a severe sanction.

### d.   Whether the Recalcitrant Party Had Been Warned of the Consequences of his Conduct

Plaintiff was warned about his conduct on multiple occasions.  At the January 22 conference, I warned plaintiff that his interlocutory appeals were improper because they were not appeals from final Orders.  At the February 11 conference, I warned plaintiff that his submission of an order to show cause that effectively sought to raise the same issues and arguments that I had previously rejected was "getting close to the edge" and that his actions were "getting close to the point where sanctions may be appropriate" (Transcript of Proceedings, dated Feb. 11, 2015 (D.I. 237) at 17).  Finally, at the February 26 conference and in the resulting Order, I strongly suggested that

plaintiff reconsider his Second Document Request and that he might face sanctions if they were improper.

Thus, the multiple warnings given to plaintiff weigh in favor of a more severe sanction.

e.  Summary

On balance, I conclude that sanctions short of dis-missal are the most appropriate resolution.  Although plaintiff has engaged in serious, willful misconduct, his conduct is mitigated to some extent by his pro se status, and the relatively short duration of his misconduct.

I conclude that the following sanctions are appropri-ate:

1.  Defendants are granted a protective order permanently relieving them of the obligation of re-sponding to Plaintiff's Second Request and plaintiff is precluded from serving any further document requests.

2.  Plaintiff is precluded from offering or using at trial or in connection with any motion any document other than the documents that have previously been produced by plaintiff and defendants, and plaintiff is precluded from relying on facts that were asked about

68

at his deposition but which he failed or refused to disclose.

    3.  Plaintiff is to submit to the limited physical examination that I previously ordered within thirty (30) days of the date of this Order.  If plaintiff fails to submit to the physical examination, I shall issue a report and recommendation recommending that the action be dismissed with prejudice.

    4.  Within 14 days of the date of this Order, defendants are to submit an affidavit or affirmation (accompanied by contemporaneous time records) establishing the legal fees they incurred in preparing the motions resolved herein.  With fourteen days of defendants' submission, plaintiff is to submit any response or opposition to the amount of fees sought by defendants.  I shall then determine the amount of an appropriate fee award.

## IV.  Conclusion

    Accordingly, for all the foregoing reasons, it is hereby ORDERED that:

1.  Plaintiff's motion to compel defendants to
produce documents and electronically stored information
(D.I. 258) is denied in all respects.

2.  Defendants' motion for a protective order
relieving defendants of the obligation of responding to
plaintiff's second request for the production of docu-
ments and notice of depositions (D.I. 274) is granted
in part and denied in part.  To the extent that defen-
dants seek a protective order relieving them of the
obligation of responding to Plaintiff's Second Request
for the Production of Documents, the motion is granted.
To the extent defendants seek relief from plaintiff's
notice of depositions, the motion is granted except
that plaintiff will be permitted to conduct two deposi-
tions of two witnesses (other than Stefan or Sheldon
Solow), each deposition to be limited to a maximum of
four hours of questioning by Plaintiff.  A protective
order precluding the depositions of Stefan and Sheldon
Solow is conditionally granted provided that defendants
submit within twenty-one (21) days of the date of this
Order, affidavits or declarations from the Solows
confirming their positions within the Corporate Defen-
dants and confirming that they have no knowledge con-

70

cerning the events underlying plaintiff's claims apart
from what they may have learned from counsel.

3. Defendants' motion for sanctions (D.I. 285) is
granted to the following extent:

    a. Defendants are granted a protective order
permanently relieving defendants of the obligation
of responding to Plaintiff's Second Document Re-
quest, and plaintiff is precluded from serving any
further discovery requests.

    b. Plaintiff is precluded from offering or
using at trial or in connection with any motion
any document other than the documents that have
previously been produced by plaintiff and defen-
dants and plaintiff is precluded from relying on
facts that were asked about at his deposition but
which he failed or refused to disclose.

    c. Plaintiff is to submit to the limited
physical examination that I previously ordered
within thirty (30) days of the date of this Order.
If plaintiff fails to submit to the physical exam-
ination, I shall issue a report and recommendation
recommending that the action be dismissed with
prejudice.

d.   Plaintiff is required to pay the reasonable attorney's fees defendants incurred in addressing the motions resolved herein.  If plaintiff is unable to pay these fees, they will be a taxable cost against plaintiff at the conclusion of this action regardless of the outcome of this action.  Within fourteen (14) days of the date of this Order, defendants are to submit an affidavit or affirmation (accompanied by contemporaneous time records) establishing the legal fees they incurred in preparing the motions resolved herein and in opposing plaintiff's motion to compel. Within fourteen (14) days of defendants' submission, plaintiff is to submit any response or opposition to the amount of fees sought by defendants. I shall then determine the amount of an appropriate fee award.

The Clerk of the Court is directed to mark Docket Items 258, 274 and 285 as "closed."

Dated:  New York, New York
        February 16, 2016

SO ORDERED

HENRY PITMAN
United States Magistrate Judge

Copies transmitted to:

Mr. Pedio Vaigasi
Apt. 2
315 First Street
Hackensack, New Jersey  07601

Melissa D. Hill, Esq.
Chelsea L. Conanan, Esq.
David A. McManus, Esq.
Morgan Lewis & Bockius, LLP
101 Park Avenue
New York, New York  10178

Mark H. Stofsky, Esq.
189 Montague Street
Brooklyn, New York  11201